# FIDELITY AND DEPOSIT COMPANY

*vs.*

# EDWIN W. POE et al., Receivers of the United Surety Company.

*Surety on Building Contract—Liability.*

Operations under a building contract having ceased for lack of funds, *held* that a surety on the original contract was not liable on account of work done or materials furnished after the resumption of operations by the same contractor under a new contract.

*Decided May 12th, 1921.*

Appeal from the Circuit Court of Baltimore City (Heuisler, J.).

The cause was argued before Boyd, C. J., Briscoe, Urner, Adkins, and Offutt, JJ.

*Washington Bowie,* for the appellant.

*Frank B. Ober,* with whom were *Janney, Stuart & Ober* on the brief, for the appellees.

Briscoe, J., delivered the opinion of the court.

The questions presented for our determination, on the record now before us, arise upon a bond given by D. E. Marshall & Co. of Kansas City, Mo., contractors, as principal, and the United Surety Company, as surety, in the sum of $50,000, to the Board of Regents of the Fifth District Normal School at Maryville, Missouri. The bond was given for the faithful performance by the principal of a contract entered into to erect a Normal School building for the sum of $152,583, and to pay for all labor and materials required for its construction.

The claim of the appellant is for the sum of $1,929.95, as assignee of three materialmen, who furnished materials on the work: Curfman Brothers, $887.24; H. S. Renshaw, $315, and Pittsburgh Plate Glass Company, $727.71. There were three separate contracts for the construction of different parts

of the building, and the bond of the United Surety Company guaranteed the performance of the contract and the payment for all labor and materials necessary to erect that part of the building, contained in Proposal No. 1, and dated May 17, 1907. The second and third contracts were covered by bonds of the Fidelity and Deposit Company, the appellant on the record in this case.

According to the testimony, on account of the exhaustion of the funds for the completion of the building and as provided in the contract itself, work under the first contract was stopped about September, 1908. Subsequently, on or about September, 1909, the contractor again began to work on the building, under an agreement by the parties to the building contract by which the contract was declared to be "revived."

The first question here presented is precisely the same as the one determined by us upon a similar state of facts, in the recent case of *Kansas City Slate and Tile Roofing Company* v. *Poe et al., receivers for the United Surety Company of Baltimore,* the appellees on this record, at the present term of this court (*ante,* p. 513).

In the course of the opinion in that case this court said: "The conduct of the parties clearly shows their understanding that the original contract became extinct when the work was discontinued under its own provisions, for they proceeded to *revive* it by a new agreement after the money required for the completion of the building was at length made available. Meanwhile there had been a total cessation of the work for a period of fourteen months, and the operating equipment of the contractors had been removed. Under the circumstances an express revival of the old contract or the execution of a new one was manifestly necessary to bring the parties again into an effective contractual relationship. Their agreement renewing the contract under which the building had been partially constructed was practically equivalent to its re-execution with an added provision for the extension of the time of completion. Before the contractual relations of the parties were thus re-established, there appear to have been no duties

or liabilities of the contractors, with respect to this undertaking, which had not been fully discharged, except in so far as they may not have paid for labor and material provided prior to the time when the construction work was interrupted. With this exception there was no subsisting obligation on account of the work as to which the contractors could have been said to be in default and with which their bond could be chargeable. It required a new agreement to impose upon the contractors the duty to resume the building operations, and only by a similar expression of assent could the surety on their bond have been subjected to a corresponding liability.

"The question with which we are here concerned is not as to the effect of a subsequent modification of the contract upon the liability of the surety on the bond, but we are deciding whether that liability applies to operations conducted in pursuance of an agreement, to which the surety was not a party, and which revived the original contract after its executory purposes had long been terminated by force of its own provisions. The court below answered this question in the negative, and in that conclusion we concur."

As the testimony in this case shows that none of the work was done, nor any of the materials furnished, by the assignors of the appellant, until after the work had stopped under the first contract in 1908, and not until after the resumption of the work under the contract of 1909, there was clearly no liability, under the authorities, of the appellee surety on its bond in this case. But apart from this, it appears from the evidence that the work was done and the materials were furnished under the second and third contracts and not under the first contract. The work ceased on the first contract when the appropriations gave out, and the contractor was paid off in full, up to that time and date. *United States of America* v. *Poe et al., Receivers, ante,* p. 466.

For the reasons stated, there was no error in the orders of the Circuit Court of Baltimore City, in overruling the appellant's exceptions to the auditor's account, wherein the appellant's claim was disallowed.

*Orders affirmed, with costs.*